T.C. Memo. 2009-270

UNITED STATES TAX COURT

KENNETH A. AND CYNTHIA A. SEAVER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2749-08.               Filed November 25, 2009.

Kenneth A. and Cynthia A. Seaver, pro sese.

<u>John W. Strate</u>, for respondent.

MEMORANDUM OPINION

HALPERN, <u>Judge</u>:  Respondent has determined a deficiency of
$4,187 in petitioners' Federal income tax for 2005.  After
concessions, the issues remaining for decision are (1) whether
petitioners may exclude from gross income $12,441 of Social
Security disability benefits received by Cynthia A. Seaver
(petitioner) and (2) whether petitioners may offset $16,614 of

discharge of indebtedness income with "the loss that precipitated the debt forgiveness."[1]

Some facts have been stipulated and are so found. The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference. We need find few facts in addition to those stipulated and shall not, therefore, separately set forth our findings of fact. We shall make additional findings of fact as we proceed.

Unless otherwise stated, all section references are to the Internal Revenue Code in effect for 2005, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioners bear the burden of proof. See Rule 142(a).[2]

---

[1]Other adjustments are purely computational and require no further discussion by us.

[2]Sec. 7491(a)(1) provides that, if a taxpayer offers credible evidence with respect to an issue, the burden of proof with respect to the issue is on the Commissioner. See also Rule 142(a)(2). Sec. 7491(a)(1) applies only if the taxpayer complies with the relevant substantiation requirements in the Internal Revenue Code, maintains all required records, and cooperates with the Commissioner with respect to witnesses, information, documents, meetings, and interviews. Sec. 7491(a)(2)(A) and (B). The taxpayer bears the burden of proving compliance with the conditions of sec. 7491(a)(2)(A) and (B). E.g., Ruckriegel v. Commissioner, T.C. Memo. 2006-78. Petitioners neither propose facts to support their compliance with the conditions of sec. 7491(a)(2)(A) and (B) nor persuasively argue that respondent bears the burden of proof on any issues because of sec. 7491(a)(1). We therefore conclude that sec. 7491(a)(1) does not apply in this case.

## Background

### Introduction

Petitioners, husband and wife, made a joint return of income for 2005. At the time they filed the petition, they resided in California.

### Social Security Disability Benefits

In 1996, petitioner was injured at work. The injury was totally disabling. In April 1997, because of her disability, she began receiving monthly benefit payments from Hartford Insurance Co. under her employer's long-term disability insurance plan (LTD benefits and the LTD plan, respectively). In March 1999, she was awarded Social Security disability benefits (SSD benefits), which consisted of a lump sum for the period since her injury and future monthly payments. Upon that award of SSD benefits, Hartford Insurance Co. reduced petitioner's monthly LTD benefits by the amount of her monthly SSD benefits and required her to repay an amount because of the lump-sum benefit she had been awarded.

Although petitioners reported $14,637 of taxable SSD benefits on their 2005 Form 1040, U.S. Individual Income Tax Return, respondent has conceded that they should have reported only $12,441 (the disputed SSD benefits). Petitioners argue that the disputed SSD benefits should be excluded from their gross income.

Theft Loss Deduction

In 1999, petitioners purchased a house in California.  The seller failed to disclose that the property did not drain properly.  Because of heavy rain, flooding in the house caused approximately $30,000 in damages.  Petitioners engaged attorney Stuart Safine (Mr. Safine) to take action against the seller to recoup their losses from the flooding.  Mr. Safine promised petitioners that, if they prevailed, they would be awarded legal fees.

As a result of arbitration, petitioners incurred legal fees to Mr. Safine of approximately $80,000, and they charged $16,614 of those fees to their bank credit cards.  Although petitioners did ultimately prevail in arbitration, the arbitrator did not award them legal fees.  Petitioners disputed their $16,614 credit card liability on the ground that Mr. Safine's conduct towards them had been "false and fraudulent".  In 2005, the banks forgave the entire $16,614 liability.

## Discussion

I.  Social Security Disability Benefits

A.  Petitioners' Argument

Petitioners assert that they should be allowed to exclude the disputed SSD benefits, or, in the alternative, to deduct them.  They argue that, because of the award of SSD benefits, they forwent tax-free LTD benefits.  Under the LTD plan,

petitioner received nontaxable benefits, but she was not entitled to receive benefits in excess of those the LTD plan provided. Also under the LTD plan, other benefits petitioner received (e.g., SSD benefits) reduced her LTD benefits. Petitioners thus argue that, if petitioner received LTD benefits tax free, and she received SSD benefits in lieu of LTD benefits, then she should receive the SSD benefits tax free as well.

In the alternative, petitioners assert that Internal Revenue Service Publication 915 (2005), Social Security and Equivalent Railroad Retirement Benefits (Pub. 915), grants them the right to deduct an amount equal to any SSD benefit they had to repay to a third party. Pub. 915 states at 14: "If you received a lump-sum payment from * * * [the Social Security Administration] and you had to repay the * * * insurance company for the disability payments, you can take an itemized deduction for the part of the payments you included in gross income in the earlier year."

B. Respondent's Argument

Respondent's argument is straightforward: "Social Security disability benefits are taxable. * * * Therefore, in this case, petitioners are required to report Social Security disability payments as taxable income." Respondent relies on section 86(a)(1), which provides that "gross income for the taxable year of any taxpayer * * * includes social security benefits".

C. Analysis

Section 86 requires the inclusion of Social Security benefits in gross income. In Reimels v. Commissioner, 123 T.C. 245, 247 (2004), affd. 436 F.3d 344 (2d Cir. 2006), we set forth the following history and description of section 86:

> Before 1983, Social Security benefits were excluded from the recipient's gross income. See, e.g., Rev. Rul. 70-217, 1970-1 C.B. 13. This longstanding practice ended with the enactment of section 86 as part of the Social Security Amendments of 1983, Pub. L. 98-21, sec. 121(a), 97 Stat. 80. The legislative history indicates that Congress made this change to shore up the solvency of the Social Security trust funds and to treat "more nearly equally all forms of retirement and other income that are designed to replace lost wages". S. Rept. 98-23, at 25 (1983), 1983-2 C.B. 326, 328.

> Section 86 requires the inclusion in gross income of up to 85 percent of Social Security benefits received, including Social Security disability insurance benefits. * * *

Thus, absent some exception, petitioners must include the disputed SSD benefits in their gross income for 2005.

Petitioners acknowledge that, under the LTD plan, "LTD benefits * * * are compared to 'other benefits' * * * [including SSD benefits] with LTD paying the remainder up to 60% of salary at the time of the injury." Thus, under the LTD plan, petitioner was entitled to disability payments only on top of other benefits (including SSD benefits). In other words, if she had not received an award of SSD benefits, her LTD plan payments for 2005 would have been greater (up to 60 percent of her salary), and

(she claims) none of those payments would have been taxable because of section 104(a)(3).  While that may well be, the LTD plan entitled her to payments only to the extent she did not receive (among other benefits) SSD benefits.  She was thus insured under the LTD plan against the risk of not receiving SSD benefits and other benefits up to the amount of 60 percent of her salary.  That Congress has chosen to allow the tax-free receipt of benefits such as those paid under the LTD plan and to tax SSD benefits under section 86 is not a choice we are free to question.  Petitioners' arguments to the contrary are of no avail.[3]

D.  Conclusion

Petitioners may not exclude the disputed SSD benefits from gross income and are not entitled to any deduction with respect to those benefits.

---

[3]Petitioners rely on Pub. 915 to support the proposition that, when the recipient of SSD benefits is required to repay them to a third party as a result of a contractual agreement, she is (or should be) entitled to a deduction.  Yet petitioners overlook that Pub. 915 allows a deduction only "for the part of the payments you included in gross income in the earlier year."  Because petitioners argue that LTD benefits were not (and would not be) taxable because of sec. 104(a)(3), Pub. 915, by its terms, does not help them.  Pub. 915 addresses a situation in which the recipient would be taxed twice on what is, in effect, one payment.  That is not petitioners' situation.

## II. Theft Loss Deduction

### A. Petitioners' Argument

Petitioners concede that they have discharge of indebtedness income under section 61(a)(12). Petitioners do not contend that any of the exceptions in section 108(a) applies but argue instead that they "should be able to offset that income with the loss that precipitated the debt forgiveness." Petitioners assert that the attorney's fees they paid to Mr. Safine are a deductible theft loss because he misrepresented the likelihood of obtaining an attorney's fee award in arbitration.

### B. Respondent's Argument

Respondent asserts that petitioners are not entitled to a theft loss deduction to offset their $16,614 of cancellation of indebtedness income. Respondent argues that petitioners have not established that a theft loss has occurred. Respondent also asserts that even if Mr. Safine's alleged misrepresentation caused petitioners to sustain a theft loss, any such loss would not be a loss in 2005, the year at issue.

### C. Analysis

Petitioners unconvincingly argue that they are entitled to a theft loss deduction under section 165. Section 165(a) and (e) allows a loss deduction for theft losses, which are treated as sustained in the year discovered by the taxpayer. Respondent argues that petitioners have failed to show either that they

sustained a theft loss or that they discovered it in 2005. We agree.

Petitioners presented insufficient evidence to prove that a theft loss occurred. Petitioners provided only uncorroborated testimony as to the reason the banks discharged their indebtedness. Petitioners argue on brief:

> Debt was discharged voluntarily by the banks after we made that [sic] claim that we paid for services that were fraudulent or misrepresented. * * * The credit agreements with the banks included a provision for reversal of charges for damaged goods, fraud or failure to perform.

Petitioners have failed to provide us with their credit card agreements with the banks or with anything beyond their own testimony as to why the banks discharged the indebtedness.

Moreover, petitioners have provided us with letters from an attorney apparently representing them in an attempt to recoup their fees from Mr. Safine's estate. Those letters indicate that that litigation was not ended adversely to petitioners until 2006. Section 1.165-1(d)(3), Income Tax Regs., provides with respect to the year in which a theft loss is sustained:

> [I]f in the year of discovery there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165, until the taxable year in which it can be ascertained with reasonable certainty whether or not such reimbursement will be received.

If there was a theft under local law, of which we are not convinced, petitioners have failed to prove 2005 is the proper year for a corresponding deduction. That is a sufficient reason to deny any deduction.

D. <u>Conclusion</u>

Petitioners are not entitled to any theft loss deduction in 2005.

<u>Decision will be entered</u>

<u>under Rule 155</u>.